Hello, Your Honors. My name is Bart Klein. I'd like to reserve, like, 30 seconds for a rebuttal. Well, even if you don't reserve it, we'll give you 30 seconds. Thank you, Judge. I'm the attorney for George Nyamu, and the issue today has to do with whether there's persecution, and whether that, assuming there's persecution, whether there's a nexus to one of the protected grounds under the asylum statute. I would like to start by indicating that my relief that I'm asking is for remand in the event that persecution is founded and the nexus is founded. There's some ambiguity about whether or not relocation in other parts of Kenya finding was found by the BIA, and it's our position that that relocation was based on the assumption that there was no past persecution, even though the immigration judge analyzed it in the correct legal analysis, which is if you find persecution, if you find nexus, then there's a rebuttable presumption of future persecution unless the person can relocate. And here the board never got to the issue of, in the event of persecution and nexus, whether there's that future persecution is rebutted by relocation within other parts of Kenya, and that's on page two, the decision of the BIA, the middle paragraph, last sentence. So what do you want us to hold? Well, first of all, I want you to hold that there's persecution, and then that persecution, there's a nexus between that and a protected ground of political opinion. The environmental activism that he did through his church, is there sufficient evidence in the record to show that he was being persecuted by his church? Well, is that the standard, sufficient evidence, if you want us to overturn the board finding? No, I don't want you to overturn the board. Yes, I want you to overturn the board's finding. Don't we have to find the evidence that's compelling? Yes. Mr. Klein, I would say you're a very fortunate man because, if I read this correctly, the BIA credited your client's assumptions about who targeted him and why, and also agreed that he was credible. Did I understand the record correctly? Well, the record basically states that we don't address the adverse credibility finding here because we find that even with the board's entire claim, respondent's entire claim is taken as true, he failed to prove that his race, religion, nationality… And I get that. I understand that. But what I'm saying is that the nexus, the factual nexus, that normally your client would have the burden to show, both the IJ and the BIA basically granted that. Isn't that a fair statement? No, that's not. It's not? Okay, tell me why that's not true. Alas. No, both in the decision, both in the immigration judge's decision, the board of immigration's decision, they are saying, assuming that the nexus was proven, assuming it's all through the decision. And what I'm arguing today is that the record is, there's sufficient evidence in the record to show that… Compelling evidence. Compelling evidence in the record, sorry about that, in the record to show that there is this nexus, there is persecution. So you're saying that for purpose of the appeal, we are not to assume that your client's officially established the nexus, is that right? That's correct. Wow. That your client was a protester of sorts, is that correct? Well, what he was, was a pastor. And he was a pastor and he had his, he belonged to a congregation. He increased his membership from three to two hundred. And because he was noticing that his membership, or at least one or two of the membership were like getting sick and dying from the pollution from the river, from the slaughterhouses, he started protesting to his bishops. And the bishops came and discharged him. And then he started two months later his own church. And many of the former congregants came to his church and he had a hundred people in his congregation. And this problem about the slaughterhouses and the, well at least the dairies that were in the areas that were polluting the river was part of a report like it's in the record by the NGO about sort of like almost an environmental impact statement that's in the record. Also in the record is his contacting an NGO to protest against these slaughterhouses. So my client's position is that his protests are of a political nature and that's what the persecutors, which is basically the business people, viewed him. There's nothing in the record to show that he was decreasing their profits. He wasn't a competitor. He wasn't a competitor. He was a pastor in the slums. He had no economic stake himself in the. In what's happening in the dairy. Even his congregants were living in the slums. They weren't involved in the slaughterhouses. They were just getting sick from the pollution that was being dumped into the river. So basically my argument is that when he was forcibly abducted and given pills, the people who abducted him said the business people thought you were, business people of the dairy, I mean of the slaughterhouses, thought you were a nuisance. And the nuisance could be two ways. You can interpret it two ways. It could be interpreted one way is that he's a nuisance because he's competing against them on some kind of economic way or he's a nuisance because he was preaching for environmental justice, for health justice. And because of involvement with an NGO, which in those countries like Kenya, basically people work with the NGOs to force political change in those countries. So it's our position that the persecutors, which are these businessmen who own these slaughterhouses, their motive against him was not economic. It might have been economic on a future thing if they ever had to clean up. Does it really matter what their motive is? Is it not the fact that it's what his opinion is? That's true. But the real idea could be read to put emphasis on what the prosecutor's motive is. And there's rulings that says if it's insequential, what the prosecutors, I'm sorry, it's persecutors, then there's no nexus to a protected crown. So, no, it's not. My reading of the case is that I have to show to some degree, even through circumstantial evidence, what the motive of the persecutors are. Let's assume for a moment that what happened to your client in terms of being carjacked and beaten up and rendered unconscious and so on, let's say arguendo that I felt that was in fact persecution and torture. I still have difficulty finding any information that ties what the, I guess, mungiki they call them or whatever it is. How do you tie them to the government? Or on the contrary, is there evidence, or in the alternative, rather, is there evidence that the government has tried and cannot control these folks? Well, I think there's evidence in the State Department report. There's two portions on page 154 and 159 that talk about the mungiki in the State Department reports. And it states that the government is trying to control the mungiki. And it specifically states that mungiki is a religious, political, and criminal organization and has up to two million members. Is that sufficient to meet the nexus about government control or government action? Well, yes, because there's evidence in the record, including reports that the high politicians rely on the mungiki to get elected, and they have undue effect, undue effect, I guess that's the wording, on the government and the running of the government. So you're saying that because of political contributions, that that is sufficient to establish the tie? Yes. Wow. That's the second one. Well, it's more than that. It's because they represent up to two million people. And Kenya, I don't know, sort of off the record, but is divided among large tribes. And the largest tribe is the Kiriulu. And also my client testified that the mungiki has tentacles all throughout the country. It's not just in the area around Nairobi and things like that. Okay. Thank you. Donald Kuvion, for Respondent. May it please the Court. Your Honors, the central and decisional question in this case is the on-account of requisite. The government is not involved or even implicated in this matter. Before we get to that, Counsel, the IJ does not seem to have found what happened to Mr. Nyamu when he was threatened on the phone, carjacked at gunpoint, threatened, drugged, and rendered unconscious to be persecution or torture. That's really not a credible finding by the IJ, is it? Well... I mean, that's serious stuff. This is not some abstract that you saw somebody down the road that your brother knew and they were hurt. This happened to this man. Yes. Why isn't that torture or persecution? Well, it isn't under the statute, Your Honor. Why is that? Because there's a relationship under the statute between persecution and the on-account of. We're going to get to the on-account of.  They're related. You've got to have one first. And I get that. My question is, does the government concede that the first prong is met, that he was, in fact, persecuted-slash-tortured? And putting aside for a moment the on-account of, I understand you don't agree with the on-account of, but don't you agree that what happened to this man constituted torture or persecution? It could. Okay. And the IJ didn't really need to review that, doesn't he? Well, but the decision under review is the Board's decision, Your Honor. I understand that. But, I mean, eventually it's going to have to take some more fact-finding. Yes. But that's why I said that the decisional issue is the on-account of requisite. I understand. The reasonable man could say that it was, and reasonable man could say it was not persecution or within statutory persecution. So who- Can you cite me any cases that would suggest that the reasonable person would say it was not? Again, just on that portion of it. Our best case is, as we cited, is the same case from 134th and 3rd, in which a lady in, I forget the country offhand, but it was somewhere out in the Pacific. There was a communal conflict between the natives of that island nation and the descendants of Indians, East Indians, who had come there under British rule. And the woman was the victim of substantial harassment and discrimination by neighbors and others who were natives of that country. But the government had nothing to do with the case. And this court said that, notwithstanding the nasty things that happened, it was not statutory persecution. That's my best case. And that is similar to this case, Your Honor. If I may quote, the petitioner testified at 145, they, meaning the abductors, just told me I've become a nuisance to the businessmen, the slaughterhouse owners. And that is the nub, shall I say, of the case. This one or? This case, this case. I was quoting the petitioner, Your Honor. No, I understand. But they also said that they threatened to kill him. They drugged him. They beat him up. They took his car. That, I think, was hyperbole and intimidation. What's hyperbole? Huh? What's hyperbole? That they beat him up? They didn't beat him up. They did not. They drugged him? Is that all they did? He was carjacked. He was drugged unconscious. He may have been tied up. He was hospitalized. And he was thrown in a wood, taken by the police later to a hospital with no systemic injuries. They told him they were going to come back and finish the job, right? But they didn't. Oh, I understand that. They threatened him. Yeah, they threatened him. If they wanted to kill him, they could have done it the first time. True. He, and the examples that he cited of people like himself meeting with much more undesirable mistreatment were cases in which he himself indicated that the victims had directly confronted the thugs and threatened them and their practices and so forth. His actions were sermons within the walls of his small congregation. That's it. And we don't know what, if anything, his congregants may have done outside. And he did nothing outside other than go to the NGO. His story was published afterwards. Nothing's happened to the NGO or his family. So by your accounting, Martin Luther King, Jr. would have been just a minor political nuisance within the walls of his own church. Not in the least. Not in the least, okay. Not at all, Your Honor. He was killed when he was down working for the garbage workers. I beg your pardon? He was killed when he was down in the town working for garbage workers. Was that a political activity? He, Your Honor? King. King. He was down there helping in a strike of garbage workers. Is that a political activity? It could be. Well, so could working for an environmental cause. It could be. I suggest your best point is the on-account-of. Maybe you can help us with that. I don't think you're going to get very far with the persecution point. All right. And I don't think you're going to get very far with on-account-of. Go ahead. Well, I would invite some help in understanding why. But what happens, assuming here it's material and it meets that level of harm, there's nothing here to suggest that it was anything more than a potential dispute between this pastor and these businessmen. There's not a scintilla in the case to suggest governmental participation, political activity of any nature outside the walls of the church. To say it was on account of a political opinion is not only not compelling, but there's no evidence to support it. Well, the political opinion is the environmental opinion. Do you say that's not a political opinion? Well, that's almost impossible to answer. Anything can have some political implication. But is it? Well, not everything. I mean, if he says this man's sleeping with his wife and that's why he's being attacked, that's not a political opinion unless he says, I have a right under the First Amendment to sleep with your wife. But otherwise, it would not be a political opinion. That would be a novel legal point even for our circuit. Well, for a circuit that finds you can lie about your medals. Well, that's a good point. Well, I still say, Your Honor, to say that it rises to the level of a political opinion under the statute is... You know, I don't understand that at all because here is a person who has no economic interest whatsoever. He's concerned about the welfare of the community. And he is protesting the actions that are endangering the health, presumably in order to bring about some pressure to change their activities. That seems to me classic political activity, not economically motivated activity. The fact that his target may be acting in their economic interest doesn't seem to me to be very related to the on account of. So I'm missing the connection. And your best case for that, again, is what? That whatever he did was within his church. He was not otherwise one you would call an activist. There's no government involvement. It's just a preacher. Can I ask on that last point, though? As I understand it from looking at the BIA's opinion, it did not base its decision denying asylum on the basis that the persecution was not committed by the government. It simply never got there, did it? That's correct, Your Honor. Okay, so basically we can't say that the BIA or, for that matter, the IJ had determined there was no government involvement. It simply didn't address the issue as far as making a finding, did it? I don't think so. Okay, so what we're really dealt with here then is whether we believe, based upon the case law, whether what this man did and his saber-rattling, if you will, about economic issues constituted political opinion. And then the rest of it would have to be determined by the IJ or the BIA. Your Honor said economic issues. This was a social issue case. Okay, social issue, political issue. But, I mean, there are cases that draw up. For example, Jahed v. INS in 2004 showed how economic issues can be part of this as well. What do you mean it's social? The BIA's ground was that the targeting was business-related. So I'm not – Well, I don't see a conflict there. I mean, his conflict is – or his beef is with businessmen and pollution, not profit. Okay. Thank you. Thank you, Your Honor. Thirty seconds. Well, Petitioner's point is that he did contact an NGO. He was involved in an NGO. In the record, there's a report about livestock and slaughterhouses made in 2004. There's talk about stakeholders. It all has the contents of a sort of like typical U.S. environmental political battle on trying to clean something up. So the – thirty seconds, Your Honor. And thank you. And the last thing I would like to again emphasize is that there's the assumption on their relocation in Kenya was based – is based upon the absence of past persecution, not the assumption that there was past persecution. So it's our position that relocation cannot be found and has to be remanded back to the board. Thank you. Thank you. The case disargued will be submitted. Next case, Oogster v. Washington State Bar.
judges: Schroeder, Reinhardt, Smith